UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

NATHANIEL WARD,

        Plaintiff,                  Case No. 2:15-cv-37

v.                                     Honorable R. Allan Edgar

D. CAMPBELL et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint with the exception of his Eighth Amendment claim against Defendant Bradley and his retaliation claims against Defendants Olmstead, Ordiway, Dunton and Campbell.

**Factual Allegations**

Plaintiff Nathaniel Ward, who declares "'sui juris' status in connection with both [his] 'property' and 'name'" currently is incarcerated in the Chippewa Correctional Facility (URF). (Amend. Compl., docket #6, Page ID#44.) In his amended *pro* se complaint, Plaintiff sues: Warden Jeffrey Woods; Corrections Officers D. Campbell, V. Olmstead, (Unknown) Bradley and (Unknown) Ordiway; Assistant Resident Unit Supervisor K. Dunton; Business Manager Edson Forrester; Accounting Manager Brenda Bonnie; Law Librarian Amanda Winnicki; Assistant Librarian Peggy Suriano; Inspector (Unknown) Hubbert; Hearing Officers D. Theut and (Unknown) O'Brien; and Legal Affairs Administrator Daphne Johnson.

Plaintiff purports to bring this action under FED. R. CIV. P. 60(b)(6) with a cause of action for violation of Regulation "Z" of the Truth and Lending Act because Defendants failed to provide him with requested tax forms. Specifically, Plaintiff requested "to file the federal tax form 1099-OID[1] on eligible issue(s) in order to effect the return of source for full settlement and closing of escrow account 240660," which is Plaintiff's prisoner number and the number of his corresponding prisoner account. (Amend. Compl., Page ID#42.) Plaintiff also requested federal tax forms 1040 and 1046. Plaintiff received the following response from Defendant Forrester regarding his request:

> Mr. Ward, I am unable to help you with the request you have made for tax documents. Your request for tax documents for the year 2014 should be resubmitted during January 2015 as the year is not ended for such document to be generated. I reviewed your pay status with the MDOC during 2013 and found there was no need to print or provide a 1099 form as your income did not require such form. Your

[1]Original issue discount (OID) is a form of interest. It is the excess of a debt instrument's stated redemption price at maturity over its issue price (acquisition price for a stripped bond or coupon). Zero coupon bonds and debt instruments that pay no stated interest until maturity are examples of debt instruments that have OID. *See* http://www.irs.gov/publications/p1212/ar02.html.

> request for documents regarding an escrow account I also cannot provide as the MDOC does not have an escrow account holding funds of this nature for you and another party.  The MDOC does not hold any funds or accounts for you that would apply to filing of a 1099-OID or 1099-INT form.  If you have information regarding specifics of these funds you claim the MDOC has I would need that information to determine any further status of your concerns.
>
> The account statements of your TRUST accounting are provided to you quarterly as required by MDOC Policy Directive, you are responsible to maintain these copies as provided to you.  Copies are not provided to you upon request.  The next printing of your account will be completed and mailed during the first two weeks of October.

9/20/14 Forrester Memorandum, Docket #6-5, Page ID#75.)  Plaintiff filed a grievance regarding the matter.  In a memorandum dated October 16, 2014, Defendant Bonnie reaffirmed the response provided by Defendant Forrester.  Plaintiff alleges that he sent correspondence to Defendants Johnson, Woods and Hubbert notifying them of the unlawful acts of Defendants Forrester, Bonnie and other Defendants, but they failed to respond.

Plaintiff further claims that on October 14, 2014, Defendant Winnicki issued a false CJS-282 disbursement from Plaintiff's trust account in the amount of $57.40 for photocopies that Plaintiff never received.  A Notice of Intent (NOI) to conduct an administrative hearing was issued with regard to the disbursement.  Plaintiff contends that Winnicki wrote the disbursement in retaliation for Plaintiff's grievance against Defendant Suriano for her attempt to embezzle funds from Plaintiff's prisoner account. Plaintiff further alleges that Defendant Forrester misappropriated funds from his prisoner account.

Plaintiff also asserts that Defendants Olmstead, Ordiway, Dunton and Campbell engaged in a variety of adverse actions in retaliation for Plaintiff's grievances.  Plaintiff contends that Defendant Olmstead fabricated several misconduct reports against him. Olmstead allegedly told Plaintiff, "You are writing grievances and snitching on the wrong one and I'm going to get you."

(Am. Compl., Page ID#54.)  In addition, Plaintiff claims that Defendants Olmstead, Ordiway and Dunton "took Plaintiff['s] personal property and destroyed it in an attempt to get back at Plaintiff." (*Id*.)  When Plaintiff refused to sign off on a grievance, Defendant Dunton allegedly reminded him that he was going to see the parole board in 30 days and threatened to classify Plaintiff to segregation with a notation that Plaintiff was a serious escape threat so that he would be denied parole.  A few days after his conversation with Dunton, Plaintiff claims that Defendant Campbell approached him and exclaimed, "Since you want to file grievances on my friend and write kites, I will fuck you up and put yo [sic] ass in segregation.  Now enjoy your time is [sic] segregation and that why your not going home!"  (Am. Compl., Page ID#55.)  Plaintiff claims that he informed Woods about the threats and retaliation that he was being subjected to as a result of filing grievances, but Woods failed to take corrective action.

Plaintiff alleges that Defendant Hubbert met with him to discuss Plaintiff's allegations of sexual misconduct against Defendant Bradley, who allegedly was demanding sexual favors from Plaintiff.  As Plaintiff was returning to his cell after the meeting with Hubbert, Plaintiff claims that he was accosted by an unknown officer who ordered Plaintiff to strip naked and questioned Plaintiff regarding sexual favors.  When Plaintiff told the officer that he was not a homosexual, the officer responded, "I'm going to get my boy Bradley 324 for you . . . . You know why this is happening to you don't you? . . . You better lay low for [sic] you end up dead hanging form [sic] a cell."  (Am. Compl., Page ID#55.)

On Wednesday, October 29, 2014, Defendant Hubbert allegedly confronted Plaintiff about documents that Plaintiff had submitted to Defendant Suriano for copying.  Plaintiff responded that they were legal documents related to a civil rights action that he intended to file with the court,

and asked that they be returned. Hubbert refused to return the documents, claiming that they constituted criminal activity, and stated that they would be destroyed.

Plaintiff's complaint also makes nonsensical arguments against Defendant Hearing Officers Theut and O'Brien, who presumably found Plaintiff guilty of various major misconduct charges. For example, Plaintiff alleges (verbatim):

> Defendants Theut has become a "taxable charge" on Defendants part due to Defendant holding the delinquent taxes that Plaintiff returned to Defendant. Defendant Theut is holding Plaintiff interest and Defendant refuse to release the promised offer (the note) after Plaintiff returned the instrument that fulfills Plaintiffs tax obligations and it changes from a taxable charge to a claim."

(Am. Compl. Page ID#58.) Plaintiff makes similar allegations against Defendant O'Brien. (*See id*. at Page ID ##60-61.)

For relief, Plaintiff seeks declaratory relief, as well as compensatory and punitive damages. In addition, Plaintiff seeks a preliminary injunction "to make Plaintiff whole by returning Plaintiff back to his family and attorney or he is past his original out date." (Am. Compl. Page ID#63.)

## Discussion

I. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

### A. **Regulation Z**

Plaintiff asserts that by denying him access to federal tax forms, Defendants violated Regulation Z, 12 C.F.R. 226.1 *et seq.*, which implements the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.* "The purpose of this regulation is to promote the informed use of consumer credit by requiring disclosures about its terms and cost." 12 C.F.R. 226.1(b). The regulation also includes substantive protections, such as the right to cancel certain credit transactions that involve a lien on a consumer's principal dwelling. *Id.* In addition, Regulation Z regulates certain credit card practices and provides a means for fair and timely resolution of credit billing disputes. *Id.* Plaintiff's claim is plainly meritless, as Plaintiff does not allege any facts indicating that he was involved in credit transaction with Defendants, let alone a transaction that would be governed by the TILA. Plaintiff, therefore, fails to state a claim under the TILA.

B.     **Rule 60(b)(6)**

Plaintiff purports to bring this action under Rule 60(b)(6) of the Federal Rules of Civil Procedure.  A Rule 60(b) motion for relief from a judgment or order may be granted only for certain specified reasons:  (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or the like; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. However, the Rule does not limit a court's power to "entertain an independent action to relieve a party from a judgment, order, or proceeding."  Fed. R. Civ. P. 60(d)(1).  The elements of an independent action are as follows:

> (1) a judgment which ought not, in equity and good conscience, to be enforced; (2) a good defense to the alleged cause of action on which the judgment is founded; (3) fraud, accident, or mistake which prevented the defendant in the judgment from obtaining the benefit of his defense; (4) the absence of fault or negligence on the part of the defendant; and (5) the absence of any adequate remedy at law.

*Mitchell v. Rees*, 651 F.3d 593, 595 (6th Cir. 2011) (quoting *Barrett v. Sec'y of Health & Human Servs.*, 840 F.2d 1259, 1262 (6th Cir. 1987)).  Such an action is not available for ordinary legal error, but only to prevent a grave miscarriage of justice.  *Mitchell*, 651 F.3d at 595 (citing *United States v. Beggerly*, 524 U.S. 38, 47 (1998)).

In this case, Plaintiff does not identify a judgment or order from which he seeks relief let alone allege circumstances indicating a "grave miscarriage of justice."  Plaintiff also fails to allege the elements of an independent action. Consequently, relief pursuant to an independent action is unavailable.

B.     **Rule 60(b)(6)**

Plaintiff purports to bring this action under Rule 60(b)(6) of the Federal Rules of Civil Procedure.  A Rule 60(b) motion for relief from a judgment or order may be granted only for certain specified reasons:  (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or the like; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. However, the Rule does not limit a court's power to "entertain an independent action to relieve a party from a judgment, order, or proceeding."  Fed. R. Civ. P. 60(d)(1).  The elements of an independent action are as follows:

> (1) a judgment which ought not, in equity and good conscience, to be enforced; (2) a good defense to the alleged cause of action on which the judgment is founded; (3) fraud, accident, or mistake which prevented the defendant in the judgment from obtaining the benefit of his defense; (4) the absence of fault or negligence on the part of the defendant; and (5) the absence of any adequate remedy at law.

*Mitchell v. Rees*, 651 F.3d 593, 595 (6th Cir. 2011) (quoting *Barrett v. Sec'y of Health & Human Servs.*, 840 F.2d 1259, 1262 (6th Cir. 1987)).  Such an action is not available for ordinary legal error, but only to prevent a grave miscarriage of justice.  *Mitchell*, 651 F.3d at 595 (citing *United States v. Beggerly*, 524 U.S. 38, 47 (1998)).

In this case, Plaintiff does not identify a judgment or order from which he seeks relief let alone allege circumstances indicating a "grave miscarriage of justice."  Plaintiff also fails to allege the elements of an independent action. Consequently, relief pursuant to an independent action is unavailable.

### C.     **42 U.S.C. § 1983**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).[2]

#### 1.     Conspiracy

Plaintiff claims that the named Defendants engaged in a widespread conspiracy to violate his federal rights. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient.

---

[2] The Court notes that Plaintiff seeks relief which is not available in this action. Plaintiff requests an injunction that would require his release. A challenge to the fact or duration of a prisoner's confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody). The Court declines to construe Plaintiff's action as a petition for habeas relief. *See Moore v. Pemberton*, 110 F.3d 22, 23-24 (7th Cir. 1997) (reasons for not construing a § 1983 action as one seeking habeas relief include (1) differing defendants, (2) differing standards of § 1915(a)(3) and § 2253(c), (3) differing fee requirements, and (4) potential application of rule regarding second or successive petitions).

*Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of conspiracy are conclusory and speculative. His allegations, even viewed in the light most favorable to Plaintiff, describe a number of discrete facts that occurred over a period of time involving numerous individual officers. Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them. He relies entirely on a highly attenuated inference from the mere fact that he has been disciplined by or subjected to objectionable treatment by a variety of prison officials in various circumstances with which he disagreed. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680. In light of the far more likely possibility that the various incidents occurring over the long history of Plaintiff's incarceration were unrelated, Plaintiff fails to state a plausible claim of conspiracy.

### 2. Failure to Provide Tax Forms

Plaintiff claims that Defendants Forrester and Bonnie failed to provide him with various federal tax forms upon request. Plaintiff does not allege or show that he has a federally protected right to access the requested tax forms. Even if he did, Plaintiff fails to provide any

legitimate reason for filing a 1099-OID or any other tax forms for the year 2013. In the absence of a federally protected right, Plaintiff fails to state a claim. Plaintiff does not make any further claims against Defendant Bonnie; therefore, she will be dismissed.

### 3. Removal of Funds from Prisoner Account

Plaintiff alleges several instances in which funds from his prisoner account were improperly removed or misappropriated by Defendants Forrester, Winnicki and Suriano.[3] While Plaintiff has a property interest in his prisoner account, his due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are

---

[3]Plaintiff's retaliation claim against Defendant Winnicki will be discussed below.

available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff fails to state a due process claim against Defendants Forrester, Winnicki and Suriano arising from the alleged misappropriation of funds from his prisoner account. Plaintiff does not make any further allegations against Defendants Forrester and Suriano; therefore, they will be dismissed from this action.

### 4. Destruction of Legal Documents

Plaintiff claims that Defendant Hubbert confronted him about documents that Plaintiff had submitted to Defendant Suriano for copying. Plaintiff responded that they were legal documents related to a civil rights action that he intended to file with the court, and asked that the be returned. Hubbert refused to return the documents, claiming that they constituted criminal activity, and stated that they would be destroyed.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states

must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim.

*Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416. Here, Plaintiff only vaguely asserts that the documents pertained to a civil rights complaint that he intended to file in court. Plaintiff does not provide any further information regarding the specific documents that he submitted for copying or the underlying cause of action. Plaintiff, therefore, fails to state a First Amendment claim for denial of access to the courts.

Moreover, to the extent Plaintiff asserts that Hubbert destroyed his legal documents without notice or hearing in violation, he fails to state a claim for violation of his Fourteenth Amendment due process rights. As previously discussed, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. *See Parratt*, 451 U.S. at 537. Plaintiff has not alleged that state post-deprivation remedies are inadequate, and, as detailed above, numerous state post-deprivation remedies are available to him. Accordingly, Plaintiff fails to state a due process claims against Defendant Hubbert. Plaintiff does not make any further claims against Defendant Hubbert; therefore, he will be dismissed.

5.  Sexual Harassment

Plaintiff alleges that Defendant Bradley demanded sexual favors from him. Plaintiff further claims that after a meeting with Defendant Hubbert regarding Bradley's sexual harassment, Plaintiff was accosted by an unknown officer who ordered Plaintiff to strip naked and questioned Plaintiff regarding sexual favors. When Plaintiff told the officer that he was not a homosexual, the officer allegedly responded, "I'm going to get my boy Bradley 324 for you . . . . You know why this is happening to you don't you? . . . You better lay low for [sic] you end up dead hanging form [sic] a cell." (Am. Compl., Page ID#55.)

"[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (quoted cases omitted). At this stage of the proceedings, Plaintiff's allegations are sufficient to state an Eighth Amendment claim against Defendant Bradley. Plaintiff does not name the unknown officer as a Defendant in the complaint. Even if Plaintiff had named the officer as a Defendant, the Court lacks sufficient information to effect service upon him at this time.

6.  Hearing Officers/Misconduct Convictions

While Plaintiff's allegations against Defendant Hearing Officers Theut and O'Brien are nonsensical, the Court will assume for purposes of this opinion that Plaintiff has named them as Defendants because they found him guilty of major misconduct charges. The Sixth Circuit, recognizing that a Michigan hearings officer has adjudicatory functions spelled out by statute in the nature of an administrative law judge, has held that hearings officers are entitled to absolute judicial

immunity from damages in relation to actions within the officer's authority. *Shelly v. Johnson*, 849 F.2d 228, 229 (6th Cir. 1988); MICH. COMP. LAWS §§ 791.251-255. *See also Williams v. McGinnis*, Nos. 02-1336, 02-1837, 2003 WL 245352, at *2 (6th Cir. Jan. 31, 2003) (recognizing that Michigan's prison hearings officers are entitled to absolute immunity); *Thompson v. Mich. Dep't of Corr.*, No. 01-1943, 2002 WL 22011, at *1 (6th Cir. Jan. 2, 2002) (same); *Gribble v. Bass*, No. 93-5413, 1993 WL 524022, at *2 (6th Cir. Dec. 16, 1993) (same). Because Plaintiff sues Defendants Theut and O'Brien for actions taken within their authority as hearings officers, they are absolutely immune from suit for damages under the circumstances of this case.

Moreover, Plaintiff cannot state a due process claim arising from the misconduct convictions. A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently

> embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his major misconduct convictions resulted in any loss of good-time credits, nor could he. The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[4] for prisoners convicted of crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. *Id.* at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011); *Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a

---

[4] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. MICH. COMP. LAWS § 800.33(5).

significant, atypical deprivation. *See Sandin v. Connor*, 515 U.S. 472 (1995). Plaintiff has not identified any significant deprivation arising from his convictions. Unless a prison misconduct conviction results in an extension of the duration of a prisoner's sentence or some other atypical hardship, a due-process claim fails. *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004). Because Plaintiff fails to state a claim against Defendants Theut and O'Brien, they will be dismissed.

### 7. Retaliation

Plaintiff contends that Winnicki wrote a false disbursement from Plaintiff's prisoner account in retaliation for Plaintiff's grievance against Defendant Suriano for allegedly attempting to embezzle funds from his prisoner account. Plaintiff also asserts that Defendants Olmstead, Ordiway, Dunton and Campbell engaged in a variety of adverse actions in retaliation for Plaintiff's grievances. Plaintiff contends that Defendant Olmstead fabricated several misconduct reports against him. Olmstead allegedly told Plaintiff, "You are writing grievances and snitching on the wrong one and I'm going to get you." (Am. Compl., Page ID#54.) In addition, Plaintiff claims that Defendants Olmstead, Ordiway and Dunton "took Plaintiff['s] personal property and destroyed it in an attempt to get back at Plaintiff." (*Id*.) When Plaintiff refused to sign off on a grievance, Defendant Dunton allegedly reminded him that he was going to see the parole board in 30 days and threatened to classify Plaintiff to segregation with a notation that Plaintiff was a serious escape threat so that he would be denied parole. A few days after his conversation with Dunton, Plaintiff claims that Defendant Campbell approached him and exclaimed, "Since you want to file grievances on my friend and write kites, I will fuck you up and put yo [sic] ass in segregation. Now enjoy your time is [sic] segregation and that why your not going home!" (Am. Compl., Page ID#55.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X*, 175 F.3d at 394. In order to set forth a First Amendment

retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

a. *Defendant Winnicki*

Assuming Plaintiff can satisfy the first two requirements for a retaliation claim, his claim that Defendant Winnicki's alleged conduct was motivated by a grievance filed against another prison employee is wholly conclusory. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

Plaintiff merely alleges the ultimate fact of retaliation. He has not presented any facts to support his conclusion that Defendant Winnicki retaliated against him because he filed a grievance against Defendant Suriano. He merely concludes that because he filed some grievances within a few days, weeks or months before Defendant Winnicki prepared the disbursement, her actions must have been motivated by his grievances. The Sixth Circuit, however, has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010). This is especially true where, as here, the plaintiff is a prolific filer of grievances. *Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews"). Moreover, in this case, the grievance was not filed against Winnicki, but another prison employee. Plaintiff alleges no facts from which to reasonably infer that Defendant Winnicki's actions were motivated by any of his protected conduct. Because Plaintiff's speculative allegation fails to state a claim, Defendant Winnicki will be dismissed from this action.

        b.     *Defendants Olmstead, Ordiway, Dunton and Campbell*

At this stage of the proceedings, the Court finds that Plaintiff's allegations against Defendants Olmstead, Ordiway, Dunton and Campbell are sufficient to warrant service.

        8.     <u>Supervisory Liability</u>

Plaintiff claims that Defendant Woods and Johnson failed to take corrective action in response to complaints and grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious

liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Woods and Johnson engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that the complaint will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e, with the exception of his Eighth Amendment claim against Defendant Bradley and his retaliation claims against Defendants Olmstead, Ordiway, Dunton and Campbell.

An Order consistent with this Opinion will be entered.

Dated:  8/6/2015            /s/ R. Allan Edgar
                            R. ALLAN EDGAR
                            UNITED STATES DISTRICT JUDGE